IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jorge Rojas, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>People's Legal Group, Inc.,<br><br>      Defendant | Case No. 1:25−cv−04564<br><br>Judge Jorge L. Alonso<br><br>Magistrate Judge David Weisman |

**PLAINTIFF'S MOTION TO COMPEL RESPONSES
TO DISCOVERY INCLUDING THE PRODUCTION
<u>OF CALLING DATA NECESSARY FOR CLASS CERTIFICATION AND TRIAL</u>**

**INTRODUCTION**

  Plaintiff moves under Rules 26 and 37 to compel complete responses on four disputes central to Rule 23 and the merits: (1) establishing a date when the Defendant will complete its production so the parties may understand the universe of any remaining discovery disputes (2) all facts supporting any consent theory for contacting the Plaintiff; (3) records of any telemarketing calls made; and (4) corresponding records of any purported consent for contacting the individuals who received telemarketing calls.

  These materials are routinely compelled in TCPA class cases because they bear on numerosity, commonality, typicality, predominance and affirmative defenses at issue and should be produced.

1

**BACKGROUND**

Plaintiff brings this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant, directly or through third parties, initiated telemarketing calls using pre-recorded messages. Plaintiff alleges he had no relationship with Defendant and did not consent to receive telemarketing calls. *See* ECF No. 1, Complaint.

Consistent with Rule 26(f), the parties conferred and commenced discovery on both merits and class issues. Discovery has revealed that Defendant's telemarketing outreach involved or was facilitated by a third-party vendor referred to as the "Hardship Department." *See* <u>Exhibit 1</u>, Defendant's Discovery Responses and Partial Production. The Defendant's discovery responses indicate that the Hardship Department (a) generated or supplied leads through telemarketing calls, (b) engaged in outreach/transfer activity to connect consumers to Defendant, and (c) had real-time access to materials maintained for Defendant's telemarketing operations. *Id.* at PLG28 ("All staff and affiliates engaged in marketing or telemarketing activities have immediate and real-time access to our internal DNC list to ensure full compliance at all times.").

Plaintiff served tailored written discovery seeking several items that have not been provided: (1) all facts supporting any consent theory for contacting the Plaintiff (Interrogatory No. 6); (2) records of any telemarketing calls made (RPD No. 14); and (3) corresponding records of any purported consent for contacting the individual who received telemarketing calls (RPD No. 15). This motion addresses these issues.

**MEET AND CONFER EFFORTS**

Pursuant to L.R. 37.2 and Fed. R. Civ. P. 37(a)(1), counsel conferred in good faith by email and telephone on August 13 and 20, 2025. Participants included Anthony Paronich for

Plaintiff and Kyle and Matthew Anderson for Defendant. The parties meet and confer narrowed and eliminated some of the disputed issues, but those covered in this motion remain.

## LEGAL STANDARD

Rule 26(b)(1) authorizes discovery of any nonprivileged matter relevant to a claim or defense and proportional to the needs of the case; generalized assertions of burden or privacy do not suffice. See *DR Distributors, LLC v. 21 Century Smoking, Inc.,* 513 F. Supp. 3d 839, 956–58 (N.D. Ill. 2021). In a TCPA case, consent is an affirmative defense that the caller must prove. *Blow v. Bijora, Inc.,* 855 F.3d 793, 803 (7th Cir. 2017). Indeed, in a TCPA case class discovery essential to Rule 23 may not be withheld while contesting certification. *Whiteamire Clinic, P.A. v. Quill Corp.,* No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013); *Ossola v. Am. Express Co.,* No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015).

## ARGUMENT

**I.     The Court Should Order a Date for the Defendant to Complete its Production.**

There is no dispute that the Plaintiff has sought what People's Legal Group must (and already has) conceded is some relevant information with these requests. As such, the Plaintiff is simply attempting to secure the documents that the Defendant will produce. Responses to interrogatories and requests for production are due within 30 days after service. *See* Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(a)(2). When a party fails to make disclosures within 30 days, or fails to cooperate in discovery, the party seeking discovery "may move for an order compelling an answer." Fed. R. Civ. P. 37(a)(3)(B); *see also Hartford Accident & Indem. Co., Prop. & Cas. Ins. of Hartford v. Greater Lakes Ambulatory Surgery Ctr., LLC*, Case No. 18-13579, 2023 U.S. Dist. LEXIS 234814, *5 (E.D. Mi. Dec. 6, 2023). Here, the Plaintiff is, in the first instance, attempting to obtain documents that People's Legal Group concedes are relevant and that it

3

stated it would produce. While counsel for the Defendant has clearly been diligent in attempting to secure documents from People's Legal Group, People's Legal Group cannot state it will produce documents and not commit to a timeline when documents will be produced. This is a clear violation of Federal Rule of Civil Procedure 34, which requires People's Legal Group to either produce the documents with its response or within "another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). It has not done so, and when confronted with this fact during the meet and confer, counsel for the Defendant confirmed that it did not have further information on when the production will resume or be completed.

Open-ended "rolling" production with no finish line defeats the Rule's purpose and leaves the parties unable to assess completeness, confer intelligently, or narrow disputes. This issue also has substantial practical implications in this case, critically for about the Hardship Department—the vendor Defendant has identified as making the calls at issue. For example, Request for Production No. 9 seeks communications with any third party that dialed the call — Defendant states it "is reviewing this Request and will supplement its response." *See* Exhibit 1. The third party is the Hardship Department; these vendor communications are central to class issues and vicarious liability and must be completed by a date certain. Similarly in response to Request for Production No. 16, which seeks communications with any third party concerning this litigation other than counsel — Defendant again says it "is reviewing … and will supplement." These are discrete and readily identifiable; they require a concrete production date.

Until Defendant finishes production (or states under oath that nothing further exists), Plaintiff cannot (i) run analyses for numerosity, commonality, predominance, and damages; (ii) identify any narrow gaps for targeted motion practice on remaining disputes; or (iii) finalize protections for PII via a tailored protective order rather than litigating hypotheticals.

**II. The Call Records Plaintiff seeks are highly relevant to contested elements of Rule 23 and Damages.**

The first request at issue relate to records that reflect that outbound calls that were made to putative class members ("Call Records"):

> 14. Please produce all documents containing any of the following information for each outbound telemarketing call sent by you or your vendors[1], including those made to the Plaintiff:
>
> a) the date and time;
> b) the caller ID;
> c) any recorded message used;
> d) the result;
> e) identifying information for the recipient; and
> f) any other information stored by the call detail records.
>
> OBJECTION. This Request assumes that Defendant makes phone calls or is otherwise subject to the TCPA. Defendant does not do any marketing or solicitations, nor does Defendant make telephone calls. Subject to and without waiving said Objection, Defendant does not have responsive documents and reserves the right to supplement this response as discovery progresses.

*See* Exhibit 1. However, as discussed in more detail below: (a) the Defendant concedes it now has some responsive information relating to the Hardship Department's calls that it is gathering[2] and (b) the Defendant should be obligated to gather any such records from the Hardship Department, just as it has gathered other information to rely on certain of its defenses from the Hardship Department.

The Call Records Plaintiff seeks are highly relevant to the numerosity, commonality, typicality, and predominance elements of Rule 23, the calculation of class-wide damages, and to at least six of Defendant's affirmative defenses.

---

[1] The Defendant previously previewed for the Court that it may file a Third-Party Complaint against the Hardship Department. *See* ECF No. 16 ("Discussion held as to possible third-party complaint against vendor.") During the meet and confer, counsel for the Defendant stated that their client does not intend to make such a filing. As such, the dispute over this discovery request is ripe for a response.

[2] That is the subject, in part, of obtaining a deadline for the Defendant to voluntarily produce its documents, as discussed above.

5

As an initial matter, where defendants contest elements of Rule 23 in proposed class actions under the TCPA, courts routinely require the production of information necessary to support those requirements. *See, e.g.*, *Cahill v. GC Servs. Ltd. P'ship*, No. 3:17-cv-01308-GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) ("The lists are reasonably calculated to identify the number of recipients of calls made during the class period, which is crucial to determine whether the class is so numerous to make joinder impracticable. The call lists are also relevant to the commonality requirement under Rule 23(a), for which plaintiff must show the class 'suffered the same injury ... such that the ... class claims will share common questions of law or fact" with those of the named plaintiffs.'"). Indeed, as Judge Schenkier previously held:

> Moreover, the information plaintiff seeks in the contested first and second requests for production is clearly relevant to class discovery; specifically, to the issues of numerosity, commonality, and typicality. As explained above, plaintiff proposes a class of persons who received faxed advertisements without a proper opt out notice, with whom Quill did not have an EBR, and from whom Quill did not have prior express permission or invitation to send such faxes (Compl. at ¶ 20). Plaintiff's requests seek, for example, copies of all faxed advertising documents, documents showing express permission or invitation to receive such faxes, and documents indicating an EBR with the recipients of the facsimiles.
>
> ***As we made clear to Quill in multiple court hearings, the Court cannot permit Quill on one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified***.

*Whiteamire Clinic, P.A. v. Quill Corp.*, No. 12 C 5490, 2013 WL 5348377, at *3 (N.D. Ill. Sept. 24, 2013) (emphasis added); *see also Central Alarm Signal, Inc. v. Business Fin. Servs., Inc.*, No. 14-14166, 2016 WL 3595627, at *2 (E.D. Mich. July 5, 2016) (granting motion to compel in putative TCPA class action, in part, because "the Court cannot permit [Defendant] on the one hand to contest class certification and on the other hand deny plaintiff the discovery relevant to its position that a class should be certified.") (quoting *Whiteamire Clinic, P.A.*, 2013 WL 5348377, at *3); *Ossola v. Am. Express Co.*, No. 13 C 4836, 2015 WL 5158712, at *7 (N.D. Ill. Sept. 3, 2015) ("Call data is relevant, and thus produced as standard practice").

6

Not surprising, then, is that courts across the country, including in this circuit, routinely compel TCPA class action defendants to provide analogous information relevant to the sizes of proposed classes. As the Northern District of Indiana has also explained:

> Courts in class-action TCPA cases have consistently held that information regarding plaintiffs and putative class members who were called by a defendant or by others on a defendant's behalf, such as outbound call lists and the number of calls made to those recipients are relevant to the numerosity and commonality requirements listed in Rule 23. . . . Although the requested information here is not precisely a call list, it does seek to quantify the number of calls and is therefore analogous to the outbound call lists that have been found relevant to the numerosity and commonality requirements. Thus, the requested text message-related information is relevant to class certification in a way that is analogous to the relevance of call logs in these other TCPA class actions. Moreover, text messages are analogous to phone calls in other TCPA cases such that the text data requested through ROGs 7–16 and RFPs 7–14, 17, 19, 34–35 is relevant to the Rule 23 numerosity and commonality requirements for class certification applicable in this case.
>
> \* \* \*
>
> As Digital has not shown the point at which the burden of producing this discovery outweighs its benefits, Digital has not met its burden and its undue burden objections are overruled.
>
> For the foregoing reasons, Mr. Fralish is entitled to the class related data he seeks through Interrogatories 7–16 and RFPs 7–14, 17, 19, 34–35.

*Fralish v. Digital Media Sols., Inc.*, No. 3:21-cv-00045-JD-MGG, 2021 WL 5370104, at \*9-10 (N.D. Ind. Nov. 17, 2021) (compelling the production of class data in a putative TCPA class action) (internal citations and quotations omitted); *accord Fralish v. Deliver Tech., LLC*, No. 3:20-CV-00353-DRL-MGG, 2021 WL 3285528, at \*9 (N.D. Ind. Aug. 2, 2021) ("For the foregoing reasons, Plaintiff is entitled to the class related data he seeks through RFPs 7-14 & 33, and ROGs 9-15.").

Also analogous, a Court in the Eastern District of Pennsylvania has held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g., Gossett v. CMRE Fin. Servs.*, 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to

7

> the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See Thrasher v. CMRE Fin. Servs., Inc.*, No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").
>
> EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, that there is a single discovery period, the motion to compel should be granted here. As one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the Plaintiff, or his expert, will determine which calls qualify for membership in the class in order to prepare this case for class certification. Because the sought-

8

after Call Records are plainly relevant to contested elements of Rule 23, including numerosity, this Court should compel their production. Because courts calculate damages under the TCPA based on the number of violations—in this case, the number of telemarketing calls delivered to class members during the class period—discovery is highly relevant to damages suffered by absent class members. For this additional reason, the Call Records Plaintiff seeks—which he will use to identify potential class members—are highly relevant and this Court should compel their production.

Indeed, the Defendant's objections to this request should be overruled or disregarded. First, the complaint alleges telemarketing calls made *by Defendant or on its behalf* in violation of the TCPA. *See* ECF No. 1. People's Legal Group cannot avoid discovery by saying the premise is wrong—"we don't call" is a *merits* position, not a basis to refuse relevant discovery. Courts in this Circuit regularly compel call data in TCPA class actions because it bears on Rule 23's numerosity, commonality, typicality/predominance, and damages as discussed above. Similarly, asking for "all call records *by you or your vendors* during the class period" does not presuppose liability—it asks for the very business records that will show whether calls occurred and how.

Instead, the Defendant's primary argument in not producing records was revealed during the meet and confer to be that it that the Hardship Department has physical possession of many of the responsive records. While this is not the objection lodged, the Plaintiff will still address the argument. Rule 34 requires production of items in a party's "possession, custody, or control." In the Seventh Circuit companies can be compelled to retrieve documents even if they sit with someone else. *See Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1426–27 (7th Cir. 1993) (party can be compelled to produce documents it has the legal right to obtain, notwithstanding lack of physical possession); *Hagenbuch v. 3B6 Sistemi Elettronici Indus.* S.R.L., No. 04 C 3109,

9

2006 WL 665005, at *3–*5 (N.D. Ill. Mar. 8, 2006) (ordering production of documents held by related entities where the responding party had sufficient control); *City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489, 492–93 (N.D. Ill. 2018) (requiring specifics and reasonable efforts; boilerplate refusals are insufficient).

The principles fit TCPA cases hand-in-glove because the statute reaches calls made "on whose behalf" they were made, under ordinary agency principles. *See Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938–39 (7th Cir. 2016) (recognizing vicarious liability under federal common-law agency). Because TCPA liability turns on what agents and vendors did "for" the seller, courts routinely, including in this District, require the seller to retrieve and produce vendor call data and related logs rather than shrug and point to Rule 45 as the Defendant attempts to do here. *See, e.g., Charvat v. DelivercareRX, Inc.,* No. 14-cv-6832 (N.D. Ill.), Doc. 25 (ordering vendor call-record production); *Fitzhenry v. Career Educ. Corp., et al.*, No. 14-cv-10172, Doc. 101 (N.D. Ill.) ("The stay on discovery is modified for the limited purpose of requiring Defendant to obtain and retain records of all outbound calls that were made for purposes of generation of leads for education services."). Using third party call centers is typical in TCPA cases, and it is also typical for federal courts to require TCPA defendants to obtain records from the call centers they engage. *See, e.g., Johansen v. Ameriquote, Inc., et. al.,* No. 15-cv-4108-RWS, Doc. 43 (N.D. Ga.) (requiring the defendant in a TCPA action to retrieve calling records from three different dialing vendors in the Philippines); *Barrett et al v. Intellectual Jewels of Tera Communications, LLC*, No. 20-cv-1529-SDG, Doc No. 15 (N.D. Ga.) (same, although there was only one vendor); *Frey v. Frontier Utilities Northeast LLC, et al.*, No. 2:19-cv-02372, Doc. 57, p. 1, Doc. 77 (E.D. Pa.) (same); *Morris v. Platform Advertising, Inc.*, No. 13-

cv-703, Doc. 35 (E.D. Tex.) (Same); *Mey v. Interstate Nat'l Dealer Servs., Inc., et. al.*, No 14-cv-01846, Doc. 82 (N.D. Ga.) (same).

Here, the limited documents obtained and the contours of discovery support the same finding. First, the Hardship Department's own DNC policy shows Defendant's legal right/access to the vendor's core compliance data. *See* Exhibit 1 at PLG28-29. This includes Hardship Department's written policy stating that "[a]ll staff and affiliates engaged in marketing or telemarketing activities have immediate and real-time access to our internal DNC list to ensure full compliance at all times." This expressly extends real-time access to "affiliates engaged in marketing or telemarketing," which necessarily includes the seller (Defendant) on whose behalf the calls were made. Indeed, this Policy itself was "obtained through an informal request" according to the Defendant[3], but the reality is that this just confirms Defendant's practical ability—and thus Rule 34 "control"—to obtain vendor records on demand. Access rights this broad are quintessential legal rights to obtain data and Rule 34 treats that as "control." *Chaveriat*, 11 F.3d at 1427. Indeed, where a vendor promises "immediate and real-time access" for affiliates, the seller cannot plausibly claim it lacks the right to obtain the very records that operationalize that access.

More fundamentally, the Defendant has already obtained "consent" records for two putative class members, as discussed in more detail below. It cannot cherry-pick from the vendor's files and then deny "control" Defendant's production of purported consent for two individuals shows it has already exercised its right (and practical ability) to obtain vendor records responsive to Plaintiff's discovery. That admission-by-conduct defeats any claim that the vendor's files are "beyond" Defendant's control as a party cannot rely on vendor-sourced

---

[3] *See* Exhibit 1.

11

materials when helpful (two consent files) but refuse to seek or produce the rest (outbound call logs). Courts in this District regularly reject such asymmetry, compelling full vendor retrieval when those records are central to Rule 23 and the merits. Indeed, by procuring two consent files, Defendant has demonstrated an established course of dealing with its vendor to request and receive records on demand. That evidences a legal right or authority to obtain responsive records—not a one-off favor. *See Meridian Laboratories, Inc. v. OncoGenerix USA, Inc.,* 333 F.R.D. 131, 135–39 (N.D. Ill. 2019) (Cummings, M.J.) ("[Plaintiff] need only establish [defendant is] able to obtain the documents… to 'control' them."); *In re Subpoena to Huawei Techs. Co., Ltd.,* 720 F. Supp. 2d 969, 976–77 (N.D. Ill. 2010) (Control exists where the party is "able to obtain the documents in question.")

### III. Any Corresponding Consent Data Should be Produced and the Defendant Cannot Arbitrarily Limit the Production to Two Putative Class Members.

Following the Plaintiff's request about calling records, the Plaintiff issued a request for any records that evidenced permission to make those calls:

> 15. Documents supporting any purported consent that authorized the above calls.
> **RESPONSE:** See enclosed documents.

*See* Exhibit 1. Produced by the Defendant were records of purported consent to make telemarketing calls from two individuals: the Plaintiff and another individual that has retained Plaintiff's counsel to pursue a claim against the Defendant, who discovery has revealed was also called by the Hardship Department. *Id.* No basis to limit the production to two records was provided in the response. Indeed, the Defendant appears to have simply selected the two consent records it wanted and went to the Hardship Department to acquire them.

A telemarketer who claims it had consent to contact a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that

12

a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has also noted: In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission. *Id.* at ¶46.

The case law has made this clear, including in the Seventh Circuit Court of Appeals. *See Rosales v. Heath,* No. 8:17CV87, 2019 U.S. Dist. LEXIS 225294, at *9 (D. Neb. June 27, 2019) ("The FCC ruled that 'if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the *caller* to prove that it obtained the necessary prior express consent." Consistent with that burden, all circuit courts deciding the question of whether consent is part of a prima-facia TCPA case or an affirmative defense have concluded that consent is an affirmative defense. *See Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54 (2nd Cir. 2018); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Blow v. Bijora*, 855 F.3d 793, 803 (7th Cir. 2017); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1115 (11th Cir. 2014)."). As another has held in this District when compelling similar information:

> If defendant cannot substantiate this defense with documents or information responsive to the interrogatory, it should say so under verification and withdraw that defense.

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011). As such, the Plaintiff has a legitimate need for this information and a reasonable

expectation that it be produced. Another court in Massachusetts recently compelled the substantively same request in a TCPA case (as well as the same call records being sought above):

> Plaintiff's motion to compel, Dkt. [19], is GRANTED, subject to the below. The documents requested in RFP 16 are relevant to the assessment of damages and numerosity. Defendant objects that the request is facially overbroad, Dkt. [22] at 8-9, but that argument ignores Plaintiff's reasonable clarification, Dkt. [19] at 11-12. Accordingly, Defendant must produce documents sufficient to show the information identified in RFP 16, items (a)-(e), as well as well as other "data that is housed natively in the telemarketing call logs," Dkt. [19] at 11, consistent with RFP 16, item (f).
>
> The documents requested in RFP 17 are relevant to Defendant's consent defense. Defendant objects that RFP 17 would require it to hunt for "every single webpage on which putative class members referenced their telephone numbers," Dkt. [22] at 11, but the Court does not find this to be a reasonable reading of the Request. Defendant must produce documents on which it has relied, relies, or intends to rely in asserting a defense of consent…Pursuant to Fed. R. Civ. P. 37(a)(5)(A), Plaintiff may submit a motion for fees within 14 days.

*See Simmons v. Author Reputation Press LLC*, Civil Action No. 1:24-cv-12330, ECF No. 23 (D. MA., June 18, 2025). This Court should compel the same.

Indeed, Defendant asserted no objection to RFP No. 15. That is dispositive. "Failure to timely assert objections to discovery requests may result in a waiver of all objections that could have been seasonably asserted." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.,* 236 F.R.D. 396, 398 (N.D. Ill. 2006). Rule 34(b)(2)(B)–(C) likewise requires a specific objection (if any) and a statement whether responsive materials are being withheld; the 2015 Advisory Committee Notes confirm this was added "to end the confusion" created by boilerplate and half-answers. Having said only "See enclosed documents," Defendant (i) waived any burden, proportionality, or scope objections (privilege aside), and (ii) represented—by omission—that nothing was withheld. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.,* No. 15-cv-10340, slip op. at 5–6 (N.D. Ill. Nov. 29, 2018) (criticizing boilerplate and compelling

14

production). However, since Defendant's own records reflect that the Hardship Department made far more than two calls for it, it should be compelled to provide all such documents.

### IV. The Defendant must state all facts for any "consent" theory and address chain of custody.

The final dispute relates to an interrogatory that has to do with purported consent to contact the Plaintiff:

> Interrogatory No. 6: If you contend that the Plaintiff provided consent to receive solicitation telephone calls, state all facts in support of that contention and identify the date(s) on which and the means by which you contend consent was obtained.
> **ANSWER:** See enclosed. An opt-in was received from Plaintiff on August 10, 2024.

*See* <u>Exhibit 1</u>. However, Defendant's answer omits key facts and relies on a document lacking chain-of-custody indicia. As such, that answer is legally insufficient. Rule 33 requires that each interrogatory be answered "separately and fully." Fed. R. Civ. P. 33(b)(3). An "evasive or incomplete" answer "must be treated as a failure to answer." Fed. R. Civ. P. 37(a)(4). When an interrogatory seeks the facts supporting a contention, courts in this District compel a factual narrative, not conclusory assertions or a bare reference to documents. *See U.S. ex rel. Tyson v. Amerigroup Ill., Inc.,* 230 F.R.D. 538, 544–46 (N.D. Ill. 2005) (requiring complete, factual answers to contention interrogatories). Because "consent" is Defendant's affirmative defense, it bears the burden to disclose the facts and records that carry that defense. *See Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011) (if a defendant cannot substantiate consent with documents/information responsive to interrogatories, it must say so under verification and withdraw the defense).

## CONCLUSION

The Plaintiff's motion to compel should be granted.

Dated: August 20, 2025

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff and the proposed class*